## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| SWEEP, LLC, | |
| *Plaintiff*, | |
| v. | No. 5:19-cv-01177 |
| BLUE DUCK EXPRESS, INC., | Jury Demanded |
| *Defendant*. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Sweep, LLC ("Sweep" or "Plaintiff") and files its Complaint ("Intervention") against Blue Duck Express, Inc. ("Blue Duck" or "Defendant") and would respectfully show as follows:

### JURISDICTION AND VENUE

1.     Defendant is subject to jurisdiction in Texas because Defendant is headquartered in Texas and has contractually consented to jurisdiction in Texas.  Venue is likewise appropriate because Defendant is headquartered in Bexar County, Texas and has contractually consented to venue in Bexar County, Texas.

2.     Subject matter jurisdiction is appropriate because the amount in controversy exceeds $75,000.00 including all damages and attorneys' fees.

### PARTIES

3.     Plaintiff is a Delaware LLC with all of its members domiciled outside of the State of Texas and outside the State of Delaware.  It may be served through the undersigned counsel of record.

4.      Defendant is a Delaware corporation with its principal place of business at 312 Pearl Pkwy, Ste. 2403, San Antonio, TX 78215.  It may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## FACTUAL BACKGROUND

5.      Blue Duck provides electric scooters to various markets around the United States for temporary private transportation.

6.      Sweep provides support services to the electric scooter market.

7.      On or about March 29, 2019, Sweep entered into a certain Services Agreement with Blue Duck (the "Services Agreement").  The Services Agreement provided that Sweep would provide various support services in the Daytona Beach, Florida region in exchange for fees to be paid bi-monthly based on the amount of services performed and number of scooters serviced.

8.      The Services Agreement provided for the exclusive jurisdiction and venue in the Courts of Bexar County, Texas.  The Services Agreement also provided for the application of Texas law.

9.      As part of the Services Agreement, Sweep was entitled to compensation for storing Blue Duck's scooter fleet.

10.      In addition, Blue Duck made the following representation and warranty that induced Sweep to enter into the Services Agreement:

> 5.1.    Mutual Warranties. Each Party represents, warrants, and covenants to the other Party that: (i) it has the full right, power, and authority to enter into this Agreement and to satisfy its obligations hereunder; and (ii) its activities hereunder will not violate any law, rule, or regulation or the terms of any agreement between such Party and any third party.

11.     From the outset of the parties' relationship, it became glaringly apparent that Blue Duck was grossly unprepared to do business in the Daytona Beach and greater Florida markets.  Blue Duck had blatantly misrepresented to Sweep its legal fitness to do business in the relevant markets covered by the Services Agreement.

12.     Blue Duck had completely and utterly failed to procure the necessary permits to do business in the Florida cities in which they were operating.  Sweep nevertheless hoped that Blue Duck would "right the ship".

13.     But unfortunately, that never happened.  Sweep began invoicing for storage in April.  Rather than paying the invoices, however, Blue Duck concocted a sham story where *Sweep*—not Blue Duck—actually breached the Services Agreement.

14.     After failing to pay the July invoice, Sweep terminated the Services Agreement pursuant to its terms.  Sweep demanded payment for outstanding invoices for storage and services.  However, to date, Blue Duck has refused to pay for the applicable fees under the Services Agreement.

15.     In addition, based on the false representations of material fact made by Blue Duck as described above, Sweep incurred substantial expenses and costs to facilitate what it believed would be a viable Services Agreement.  However, because Blue Duck was never even licensed to do business in the relevant principalities in which the Services Agreement was to be performed, these expenses were lost with no hope for return on the time and resource investment.  These damages exceed $ 75,000.00 including damages for breach of contract, fraud, attorneys' fees and costs.

## CAUSES OF ACTION

**Count 1: Fraud**

16.     Plaintiff hereby incorporates the preceding allegations as if fully set forth herein.

17.     As discussed above, Blue Duck made false statements of material fact to Sweep with the intent to induce Sweep into entering into the Services Agreement.  These false representations of material fact were made by Blue Duck in writing in the Services Agreement itself.

18.     Blue Duck knew that it did not have the requisite legal authority to perform under the Services Agreement when it entered into the Agreement, thereby making its misrepresentations knowing and intentional.  Blue Duck had a pecuniary interest in Sweep relying on the false statements of fact.

19.     Sweep relied on these representations to its detriment.  As a result of this reliance, Sweep incurred substantial expenses and lost profits exceeding $ 75,000.00.

20.     In addition, Sweep will prove by clear and convincing evidence that Blue Duck committed the fraud, thereby entitling Sweep to exemplary damages exceeding $75,000.00.

**Count 2: Breach of Contract**

21.     Plaintiff hereby incorporates the preceding allegations as if fully set forth herein.

22.     As discussed above, the parties entered a valid and enforceable Services Agreement.  Sweep fully performed under the Services Agreement.  Blue Duck failed to

perform under the Services Agreement as required and was not otherwise excused from performance.

23.     As a result, Sweep was damaged and continues to suffer damages resulting from storing Blue Duck's property, in which is maintains a garagemen's lien to secure performance as well as any other liens and self-help rights available under Texas law.

24.     Moreover, under the Services Agreement and under Chapter 38 of the Texas Civil Practices & Remedies Code, Sweep is entitled to reasonable and necessary attorneys' fees in bringing this action, which—together with the actual damages stated herein—will exceed $75,000.00.

## CONDITIONS PRECEDENT

25.      All conditions precedent to Intervenor's claims have occurred or have been waived.

## JURY DEMAND

26.     Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a.  awarding actual, reliance, consequential, and exemplary damages on the fraud claim;

b.  awarding actual damages on the breach of contract claim;

c.  awarding reasonable attorney's fees;

d.  pre- and post-judgment interests and costs; and

e.  all other relief to which Plaintiff is entitled in law or equity.

Dated:  September 30, 2019.

Respectfully submitted,

Camara & Sibley LLP


/s/ Joseph D. Sibley_____
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
4400 Post Oak Pkwy.
Suite 700
Houston, Texas 77027
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF**